**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| PREMIER PAYMENTS ONLINE, INC. | : | CIVIL ACTION |
| v. | : | |
| PAYMENT SYSTEMS WORLDWIDE, et al. | : | NO. 11-3429 |

**MEMORANDUM RE: PLAINTIFF'S MOTION TO STAY AND DEFENDANTS'**
**MOTION TO DISMISS**

Baylson, J.                                                                                 August 18, 2011

## I.    Introduction

This case arises out of transactions between Plaintiff Premier Payments Online, Inc.

("PPO" or "Plaintiff"), a corporation that acts as an intermediary with banks to provide credit

card processing services to merchants, and Defendants Centerline International, LLC

("Centerline") and Payment Systems Worldwide ("PSW") (collectively, "Defendants"),

companies that resell payment processing services to merchants.  Plaintiff and Defendants had an

agreement by which Defendants referred customers to Plaintiff in exchange for a commission on

the fees Plaintiff earned.  In June 2009, Plaintiff began withholding fees owed to Defendants due

to actual and potential chargebacks by customers.

On May 26, 2011, Plaintiff filed this civil action against Defendants for breach of

contract (Count I), unjust enrichment (Count II), misrepresentation (Count III), and declaratory

judgment (Count IV).[1]  On June 29, 2011, Defendant PSW filed a civil action in the United

---

[1] Plaintiff also sued Defendant Amtrak International, S.A. ("Amtrak") and Defendant
Patriarc Holdings, Inc. ("Patriarc"), for misrepresentation.  The summons returned unexecuted as

States District Court for the Eastern District of California against Plaintiff PPO, case no. 11-1082, alleging willful failure to pay commission, breach of contract, unjust enrichment, and declaratory relief (the "California Action").

Currently pending before the Court are two motions.  First, Defendants filed a Motion to Dismiss the Complaint (ECF No. 7) for lack of jurisdiction and failure to state a claim.  Second, Plaintiff filed a Motion to Stay the "Second-filed" California Action ("Motion to Stay") while the Motion to Dismiss is pending.  (ECF No. 13)

The Court held oral argument on these motions on August 12, 2011.  With respect to the Motion to Stay, the Court highlighted a footnote in Defendants' Response indicating that "Defendants have no desire to litigate in two fora" and "would stipulate to transfer the California action to Pennsylvania and consolidate it with this case if this Court does not grant Defendants' Motion to Dismiss."  (ECF No. 17 n.1)  The Court noted the mirror-image similarity of the California Action to this case, and explained its authorization to stay Defendants from prosecuting the California Action under the "first-filed" rule.  The parties discussed whether Pennsylvania or California choice of law rules would apply to the California Action if transferred to this Court, an issue not here ripe for decision.  Following this discussion,  Defendants agreed to file a motion to transfer and consolidate the California Action with this action.  Therefore, the Motion to Stay is moot.[2]

With respect to the Motion to Dismiss, the Court asked Defendants if it should hold an

_____

to Amtrak on July 5, 2011 (ECF No. 8).  The summons returned executed as to Patriarc on July 11, 2011 (ECF No. 11); however, Patriarc has not entered an appearance.

[2] Once the California Action is transferred here, the Court anticipates realigning the parties so that the complaint in the California Action becomes a counterclaim in this action.

evidentiary hearing on their contention that the Court lacked subject matter jurisdiction because Plaintiff did not properly plead the citizenship of Defendant Centerline, a limited liability company ("LLC").[3]   Defendants declined to schedule a hearing.  Defendants agreed with the Court that in light of the affidavit filed by Plaintiff's president, Janet Conway, clarifying that Centerline is a citizen of California because its only known member, Curtis Bayne ("Bayne"), is a citizen of California, there was no longer any live dispute concerning subject matter jurisdiction.

Following oral argument, it remains for this Court to evaluate the parties' contentions with respect to Defendants' Motion to Dismiss for failure to state a claim.  For the following reasons, the Court finds that Defendants' arguments are not meritorious and will deny the Motion to Dismiss.

## II.    Factual Background

In October 2006, Centerline and Plaintiff agreed that Centerline would refer merchants to Plaintiff to assist in establishing credit card processing agreements with banks, in exchange for a a commission on the earned fees Plaintiff received from the banks.  Compl. ¶¶ 16-17.  The agreement did not entitle Centerline to receive commissions on transactions that resulted in a chargeback to the bank or a refund to the customer.  Compl. ¶ 18.

In November 2007, Plaintiff sent Centerline an "updated written agreement"[4] ("the

---

[3] An LLC is an unincorporated business entity which takes on the citizenship of each of its members.  <u>Zambelli Fireworks Mfg. Co. v. Wood</u>, 592 F.3d 412, 419-20 (3d Cir. 2010).

[4] Plaintiff does not allege the existence of an "original" written agreement.  Defendants dispute the existence of any written agreement.  Defendants contend that Plaintiff's predecessor, CNP Worldwide Incorporated ("CNP") had a written contractual agreement with Centerline, whereas Plaintiff, formed in 2007, had no written agreement with either Centerline or PSW.

Agreement"), which provided that Centerline would defend against and hold Plaintiff harmless from any loss, liability, damage, penalty, or expense (including attorney fees and cost of defense) resulting from any warranty or false or misleading representation made to Plaintiff.  Compl. ¶¶ 19-20.[5]  In June 2009, PSW succeeded to Centerline's rights and responsibilities under the Agreement.  Compl. ¶ 21.  Curtis Bayne operated and controlled both Centerline and PSW.  Compl. ¶ 15.  Plaintiff paid Centerline and PSW in accordance with the terms of the Agreement.  Compl. ¶ 22.

On November 2, 2007, Plaintiff entered an agreement to refer merchants to Credicorp Bank of Panama ("Credicorp") in exchange for a percentage of the fees Credicorp collected, and to indemnify Credicorp on claims arising from the referred merchants' violations of credit card association rules.  Compl. ¶¶ 24-25.  In 2008, Centerline and PSW referred Amtrak, which had established a Panamanian company, Patriarc, to Plaintiff to establish business with Credicorp.  Compl. ¶¶ 26-28.  Centerline and PSW made representations to Plaintiff that Amtrak was an online pharmaceutical retailer licensed to do business in Florida, properly formed and in good standing under Costa Rican law, and owned and managed by Roy Vargas ("Vargas").  Compl. ¶¶ 30-31.  Centerline, PSW, and Bayne also represented to Plaintiff that Patriarc was a legitimate and properly formed company under Panamanian law with three named directors.  Compl. ¶¶ 33-

---

Defs.' Mot. Dismiss 2.  However, on a motion to dismiss, the Court must consider the facts in the light most favorable to Plaintiff.  <u>Phillips v. Cnty. of Allegheny</u>, 515 F.3d 224, 228 (3d Cir. 2008).

[5] Plaintiff did not attach any written agreement to the Complaint.  Defendants attached to the Motion to Dismiss an unsigned written agreement allegedly proposed by Plaintiff that was never accepted by Defendants.  Ex. C to Defs.' Mot. Dismiss 2.  Plaintiff, in its response brief, refers to Defs.' Ex. C as the "Agreement" under which it brings its claims.  Resp. at 2.

34.  Plaintiff believes these representations were false, because Vargas was a "front" for Bayne and Adam Gallegos ("Gallegos"), a California citizen and convicted felon, and Patriarc was owned and controlled by Bayne and/or Gallegos .  Compl. ¶¶ 7, 32, 34.

Plaintiff relied upon these representations and referred Amtrak/Patriarc to Credicorp, and Credicorp began processing its transactions in late 2008.  Compl. ¶¶ 35-36, 38.  In early 2010, Amtrak/Patriarc made a large number of sales resulted in customer chargebacks of credit card charges.  Compl. ¶¶ 39-40.  Credicorp terminated its business with Patriarc/Amtrak in April 2010.  Compl. ¶ 41.  Plaintiff alleges that upon information and belief, Bayne and Gallegos took the revenue for their use, and conspired and acted in concert with the other Defendants to commit fraud.  Compl. ¶¶ 42-43.  Credicorp suffered losses of $600,000 as a result of these actions, and Plaintiff may be obligated to indemnify Credicorp.  Compl. ¶¶ 44-45.

In June 2009, Plaintiff stopped forwarding commissions for Patriarc/Amtrak and three other companies due to concern about chargebacks.  Compl. ¶¶ 46-47.  Plaintiff withheld approximately $200,000 as of the filing of the Complaint.  Compl. ¶ 49.  In April 2011, Credicorp withheld $60,000 in payments due Plaintiff based upon Credicorp's losses related to Patriarc/Amtrak; therefore, Plaintiff holds a net of approximately $140,000.  Compl. ¶ 50.

## III.  Legal Standard

### A.  Jurisdiction

This Court has subject matter jurisdiction under 28 U.S.C. §1332(a).  Plaintiff is a citizen of Pennsylvania.  Compl. ¶ 1.  PSW and Centerline are citizens of California.  Compl. ¶¶ 2-3.  Amtrak is a citizen of Costa Rica. Compl. ¶ 4.  Patriarc is a citizen of Panama.  Compl. ¶ 5.  The matter in controversy exceeds $75,000.

5

**B.      Standard of Review for a Rule 12(b)(6) Motion to Dismiss**

In deciding a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), the court must accept as true all well-pleaded factual allegations and must construe them in the light most favorable to the non-moving party.  Phillips v. Cnty. of Allegheny, 515 F.3d 224, 228 (3d Cir. 2008).  The Third Circuit has addressed the effect of the Supreme Court's most recent pleading-standard decisions, Twombly v. Bell Atlantic Corp., 550 U.S. 544 (2007), and Ashcroft v. Iqbal,129 S. Ct. 1937 (2009).  See Phillips, 515 F.3d at 233-34.  Twombly established a three-pronged approach for all civil actions: first, the court must identify the elements the plaintiff must plead to state a claim; second, the court asks whether the complaint sets forth factual allegations or conclusory statements; third, if the complaint sets forth factual allegations, the court must assume their veracity and draw reasonable inferences in favor of the non-moving party, but then must determine whether the factual allegations plausibly give rise to an entitlement to relief.  Santiago v. Warminster Twp., 629 F.3d 121, 130 & n.7 (3d Cir. 2010); see Iqbal, 129 S. Ct. at 1950, 1953. For the second step, the court should separate the factual and legal elements of the claims, accepting the well-pleaded facts as true and disregarding any legal conclusions.  Fowler v. UPMC Shadyside, 578 F.3d 203, 210-11 (3d Cir. 2009).

To state a claim, a plaintiff must allege circumstances with enough factual matter to suggest the required claim exists.  Phillips, 515 F.3d at 234. This does not impose a probability requirement at the pleading stage, but instead simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of the necessary elements of the claims.  Iqbal, 129 S. Ct. at 1949; Phillips, 515 F.3d at 234.  Pleading standards are not the same as standards of proof.  See Fowler, 578 F.3d at 213-14. Whether a claim is plausible depends on the context, i.e.

the nature of the claim asserted.  Phillips, 515 F.3d at 233.  A claim has facial plausibility when the plaintiff pleads factual content that allows the court to reasonably infer that the defendant is liable for the misconduct alleged.  Gelman v. State Farm Mut. Auto. Ins. Co., 583 F.3d 187, 190 (3d Cir. 2009).

## IV.    Discussion

Defendants raise four grounds for dismissal of the complaint for failure to state a claim. The Court addresses each argument in turn.

### A.    Statute of Frauds

Defendants contend that Plaintiff has not stated a claim for indemnity because the Pennsylvania Statute of Frauds requires that an indemnity contract be signed and in writing to be enforceable.  Plaintiff responds that the statute of frauds is an affirmative defense but not grounds on which to dismiss a claim, and that it applies to surety but not indemnity agreements. Alternatively, Plaintiffs contend that even if the Statute of Frauds does apply, there is a question of fact regarding whether the contract was signed that prevents the Court from determining this claim as a matter of law..

The Statute of Frauds requires that for contracts of surety, there be "some memorandum or note. . . signed by the party to be charged. . ."  Sheet Metal Workers Local 44 v. Scranton Sheet Metal, 881 F. Supp. 959, 961 (M.D. Pa. 1994) (Caldwell, J.).  A court should not grant a motion to dismiss a claim based on the Statute of Frauds where discovery may reveal that a writing exists.  Id.  On the other hand, if the parties establish the existence of an oral contract, it is clear that an "oral contract of indemnity is binding and the statute of frauds and parol evidence rule are inapplicable."  Kroon v. Maxwell, 297 F. Supp. 277, 282 (E.D. Pa. 1969) (Kraft, J.)

7

(citing Restatement, Security § 146).

A surety agreement is one in which a party "undertakes to pay money or to do any other act in the event that his principal fails therein." <u>Reuter v. Citizens & N. Bank</u>, 599 A.2d 673, 677 (Pa. Super Ct. 1991) (citing <u>In re Brock</u>, 166 A. 778, 781 (Pa. 1933)).  The suretyship statute of frauds statute, 33 P.S. § 3 applies to promises to answer for the debt of another, not promises to indemnify against liability.[6]

In this case, the Statute of Frauds is likely inapplicable because the agreement at issue is one of indemnification against liability, not suretyship.  However, even if the Statute of Frauds applies, the Court agrees that there is a dispute of fact as to whether or not there is a written agreement in this case.  Plaintiff has alleged a written agreement, but Defendant contends that the parties engaged in business based on an oral agreement or course of dealing and performance. The Court finds that it would be premature to dismiss the claim for indemnity based on the Statute of Frauds and will deny the motion to dismiss this count.

### B.    Unjust Enrichment

Defendants contend that Plaintiff has not sufficiently alleged an unjust enrichment claim because the parties' oral agreement and course of dealing created an express contract that governs the transaction.  In response, Plaintiff asserts that it pled unjust enrichment and breach of

---

[6] 33 P.S. § 3 provides: "Promise to answer for debt of another.  No action shall be brought whereby to charge any executor or administrator, upon any promise to answer damages out of his own estate, or whereby to charge the defendant, upon any special promise, to answer for the debt or default of another, unless the agreement upon which such action shall be brought, or some memorandum or note thereof, shall be in writing, and signed by the party to be charged therewith, or some other person by him authorized."

contract as alternative theories of recovery.

To state a claim for unjust enrichment under Pennsylvania law, the plaintiff must allege "'benefits conferred on one party by another, appreciation of such benefits by the recipient, and acceptance and retention of these benefits under such circumstances that it would be inequitable [or unjust] for the recipient to retain the benefits without payment of value.'" Allegheny Gen. Hosp. v. Philip Morris, 228 F.3d 429, 447 (3d Cir. 2000) (quoting 16 Summary of Pa. Jur. 2d Commercial Law § 2.2 (1994)).  Unjust enrichment is a "'quasi-contractual doctrine'" that does not apply in cases where the parties have a written or express contract.  Hershey Foods Corp. v. Ralph Chapek, Inc., 828 F.2d 989, 999 (3d Cir. 1987) (quoting Ben. Trust Life Ins. Co. v. Union Nat'l Bank, 776 F.2d 1174 (3d Cir. 1985)).

A plaintiff is permitted to plead alternative theories of recovery based on breach of contract  and unjust enrichment in cases where there is a "question as to the validity of the contract in question." AmerisourceBergen Drug Corp. v. Allscripts Healthcare, LLC, Civ. A. No. 10-6087, 2011 WL 3241356, at *3 (E.D. Pa. July 29, 2011) (Jones, II, J.) (dismissing a claim for unjust enrichment where neither party contested the validity of the written contract).  Where the existence of a contract is uncertain, pleading in the alternative is permitted, even though a plaintiff cannot recover under both theories.  See United States v. Kensington Hosp., 760 F. Supp. 1120, 1135 (E.D. Pa. 1991) (VanArtsdalen, J.) (denying motion to dismiss unjust enrichment claim pled in the alternative and instructing defendants to raise the issue in a motion for summary judgment after the completion of discovery).

Here, there is a dispute as to whether the parties were operating based on a course of dealing or a written contract.  The parties have not yet engaged in discovery, which may resolve

this question.  Therefore, the Court will deny the motion to dismiss Plaintiff's unjust enrichment claim at this stage.

### C.      Fraudulent Misrepresentation

Defendants contend that Plaintiff did not properly allege a claim for fraudulent misrepresentation because the allegations are based on "information and belief" without a foundation.  Defendants argue that Plaintiff did not state with particularity the time, place, or content of the fraudulent statements.  Plaintiff responds that it properly pled the claim in accordance with Rule 9(b), which is relaxed as to factual information concerning internal corporate affairs.

Rule 9(b) imposes a higher pleading standard for allegations of fraud in order to provide defendants with "'notice of the claims against them, provide[ ] an increased measure of protection for their reputations, and reduce[ ] the number of frivolous suits brought solely to extract settlements.'"  In re Suprema Specialties, Inc. Sec. Litig., 438 F.3d 256, 270 (3d Cir. 2006) (quoting In re Burlington Coat Factory Sec. Litig., 114 F.3d 1410, 1418 (3d Cir. 1997)).  Under Rule 9(b), a plaintiff must allege fraud with particularity by pleading the following: "' (1) a specific false representation of material fact; (2) knowledge by the person who made it of its falsity; (3) ignorance of its falsity by the person to whom it was made; (4) the intention that it should be acted upon; and (5) that the plaintiff acted upon it to his [or her] damage.'"  Id. (quoting Shapiro v. UJB Financial Corp., 964 F.2d 272, 284 (3d Cir. 1992)).  The particularity requirement is relaxed in "cases alleging corporate fraud, [where] 'plaintiffs cannot be expected to have personal knowledge of the details of corporate internal affairs. . .'"  Weiner v. Quaker Oats Co., 129 F.3d 310, 319 (3d Cir. 1997) (quoting Craftmatic Sec. Litig. v. Kraftsow, 890 F.2d

628, 645 (3d Cir. 1989)) (holding that complaint satisfied 9(b) pleading requirements in light of the "factual information . . . peculiarly within the defendant's knowledge or control").[7]

Here, Plaintiff has sufficiently alleged the elements of fraud.  First, Plaintiff alleged specific false representations of material fact made by Centerline and PSW in 2008, via communications with and the mailing of documents to Plaintiff, concerning the nature and legality of Amtrak and Patriarc's business, and the ownership and control of these entities. Compl. ¶¶ 30-34.  Second, Plaintiff alleged that Centerline and PSW were the alter egos of Bayne, one of the true owners and operators of Amtrak, from which the Court may infer that Defendants had knowledge of the representations.  Compl. ¶¶ 15, 32.  Third, Plaintiff alleged that if Defendants had disclosed the true ownership of Amtrak and Patriarc, it would not have done business with those companies.  Compl. ¶¶ 32, 34.  Fourth, Plaintiff alleged that Defendants made these representations to Plaintiff with the intention that Plaintiff would submit the information to Credicorp and establish a business relationship between Credicorp and Amtrak. Compl. ¶ 28.  Fifth, Plaintiff contends that in reliance on the misrepresentations, Plaintiff referred Amtrak to Credicorp to establish a merchant account, resulting in chargebacks to Credicorp.  Compl. ¶¶ 35-40.  Plaintiff further contends that these transactions resulted in approximately $600,000 of losses to Credicorp, for which Plaintiff may be liable by virtue of its

---

[7] In certain circumstances, there may be a statutory requirement that a complaint containing allegations "made on information and belief" also allege the foundation of those allegations with particularity, "providing the who, what, when, where and how of the sources, as well as the who, what, when, where and how of the information those sources convey."  Inst. Investors Grp. v. Avaya, Inc., 564 F.3d 242, 253 (3d Cir. 2009) (discussing requirements of Section 78u–4(b)(1) in pleading a securities fraud claim).  However, no such statute governs this case.

indemnity obligation to Credicorp. Compl. ¶¶ 44-45. Therefore, even without relaxing the Rule 9(b) standards, Plaintiff has sufficiently pled with particularity each element of its fraudulent misrepresentation claim. The Court will deny the motion to dismiss this claim.

      **D.**      **Declaratory Judgment**

     Fifth, Defendants contend that the declaratory judgment claim must be dismissed due to Plaintiff's forum shopping, which subverts the Declaratory Judgment Act. Defendants argue that Plaintiff filed the action in Pennsylvania in anticipation of PSW filing suit in California, and was motivated solely by forum shopping. In response, Plaintiff contends it had a good faith basis for bringing suit for declaratory judgment; indeed, Defendants requested a mirror image declaratory judgment action in California. Plaintiff also contends it had legitimate, non-forum shopping reasons for bringing suit in Pennsylvania, including that Plaintiff is based in Pennsylvania, the Agreement is based on Pennsylvania law, the witnesses are in Pennsylvania, Defendants solicited Plaintiff to enter into the contract through communications in Pennsylvania, Defendants directed false communications to Plaintiff in Pennsylvania, that its counsel is not admitted in California, and that Plaintiff would contest personal jurisdiction in California. See Conway Dec. ¶¶ 8-11.

     Given that, at the oral argument, the parties agreed to litigate this case in Pennsylvania, and Defendants are transferring their declaratory judgment claim to this action as a counterclaim, the Court finds that Defendants' argument concerning forum shopping is moot. The Court will deny the motion to dismiss the claim for declaratory relief.

**VI.**    **Conclusion**

     For the reasons discussed above, the Court will deny Defendants' Motion to Dismiss Plaintiff's Complaint.

An appropriate Order follows.

O:\CIVIL 11-12\11-3429 PPO v PSW\MTD Mem.wpd